IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| CHARLES A. PALMER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | NO. 5:09-CV-326 (CAR) |
| VS. | : | |
| | : | |
| OFFICER RICE, *et al.*, | : | |
| | : | Proceedings Under 42 U.S.C. §1983 |
| Defendants. | : | Before the U.S. Magistrate Judge |
| | : | |

## RECOMMENDATION

Before the Court is a Motion for Summary Judgment filed by Defendants Officer Rice, David Wood, and Ronald Ruger. Doc. 30. Because the evidence in the record before the Court presents genuine issues of material fact requiring determination at trial, it is **RECOMMENDED** that the Motion be **DENIED**.

In accordance with Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted if "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" Fed.R.Civ.P. 56(a). A genuine dispute of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex Corp. v. Catrett, 477 U.S.

317, 323 (1986) (internal quotation marks omitted).  If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the moving party is not entitled to judgment as a matter of law.  Id. at 324–26.  If the evidence presented by the nonmovant is "not significantly probative" or is "merely colorable," then summary judgment may be granted.  Anderson, 477 U.S. at 249.  In fact, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ." Celotex, 477 U.S. at 322.

The evidence in the record of this case presents genuine issues of material fact regarding Plaintiff's claims that Baldwin State Prison CERT team officers used excessive force against him in violation of the Eighth Amendment during a response to a prison disturbance on January 12, 2009.  Doc.1.  On Motion for Summary Judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, 477 U.S 242, 255 (1986).  For purposes of this motion, therefore, the facts are taken primarily from Plaintiff's deposition testimony.

Plaintiff testified in his deposition that the disturbance began when two inmates refused to comply with the orders of a female corrections officer.  The two inmates began to seal the doors of their dormitory using bed sheets.  Plaintiff stated that he did not participate in the disturbance, but admitted that he furnished the inmates with his bed sheets and a razor, under duress.  He testified that he was observed on video providing the sheets and razor.  As the disturbance escalated, Plaintiff sat in his room with his roommate, Charles Lynch, and "watched the entertainment." Pl.'s Dep. 21-22.  At some point, the prison's "CERT" team introduced tear gas into the dormitory and entered the area.  Plaintiff lay face down on the ground as they entered.  An officer placed flex cuffs on his

wrists and escorted him outside to an area outside the sally port. As he was being escorted out, an unidentified officer punched him in the lower abdomen. The officers separated Plaintiff out into a group of inmates considered to have been the instigators of the disturbance. Plaintiff and the other inmates were stripped naked and shoved to the ground. As Plaintiff was lying on the ground, the officers began to beat him. Plaintiff testified that he was punched at least thirty times, kicked approximately fifteen times, and pepper sprayed about twelve different times. While beating him, the officers shouted derogatory remarks about his sexual orientation, calling him a "punk bitch," a "faggot," and a "queer." The officers dragged him along the ground, naked, and then stood him up and put his boxer shorts back on him. Plaintiff was taken to a holding cell, where he was left overnight, in his underwear. He was not allowed to shower or clean the pepper spray residue from his face. There was no mattress in the room. He continued to wear the flex cuffs for four to six hours, until someone cut them off. At some time after the disturbance, Plaintiff saw a nurse, who did nothing but wipe his nose.

In addition to his own deposition testimony, Plaintiff has submitted a statement from his roommate at Baldwin State, Charles Lynch. The statement is unsigned and unsworn. Lynch states that he observed Michael Rice, Cedric Taylor, and David Wood beating Plaintiff while Plaintiff lay face down on the ground, in handcuffs. Plaintiff himself was only able to identify Michael Rice by name, and offered physical descriptions of two other officers who participated.

The day after the disturbance at Baldwin State, Plaintiff was transported to Augusta State Medical Prison, where he was evaluated by a nurse practitioner. The treatment notes from ASMP show that Plaintiff presented with abrasions on his left and right shoulders, right arm, and left leg. He was x-rayed, but the x-rays showed no abnormalities in the chest or abdomen. On January 18 and 23, Plaintiff reported vomiting and chest pains. On February 24, he was transferred to Phillips State Prison, where he continued to receive treatment for headaches and was referred to a

neurologist, who prescribed Inderal.  On March 3, 2009, Plaintiff complained to medical staff at Phillips about a breathing problem which he attributed to his exposure to tear gas.  On March 17, 2009, he received another chest x-ray, which showed that his lungs were clear.

Plaintiff claims that his lasting injuries from the assault include headaches, difficulty breathing, and post-traumatic stress.  His medical records show that chest x-rays revealed no abnormalities to indicate lung damage.  His medical records also show, and Plaintiff himself has acknowledged, that he suffered from migraine headaches and psychological difficulties prior to the alleged assault.[1]  Plaintiff testified at his deposition that he had attempted suicide on four occasions prior to January 2009, and also stated that he had a history of causing injury to himself, including cutting himself.

Defendants have contested Plaintiff's testimony.  Through affidavits, Wood, Rice, and Rugar have testified that they did not use any physical force against Plaintiff and that they did not observe anyone else using force on Plaintiff.  Rice and Rugar state that they never came in contact with Plaintiff during the incident, although Wood testifies that he escorted Plaintiff to segregation with Cedric Taylor.  Taylor does not recall any contact with Plaintiff.  All witnesses proffered by Defendants state that pepper spray was only used once during the incident, by Wood against inmate Dejuan Jackson, who was considered to be the instigator of the disturbance.  Officer Brian Jones states in his affidavit that he distributed the pepper spray canisters to the officers during the incident.  His procedure was to weigh the canisters before and after distribution, to record which ones were used.  His records showed that the only canister that had been used during the disturbance was the canister issued to David Wood.  Nurse Michael Wronek testifies that he examined Plaintiff after the

---

[1] In 2003, Plaintiff suffered a severe beating at the hands of another inmate.  As a result, Plaintiff was in a coma for two days and required brain surgery to remove blood clots from his head.

incident.  He states that Plaintiff denied any injuries and that he did not observe any injuries except irritation from the tear gas.

The evidence in this case presents genuine issues of material fact regarding the force used by Defendants following the inmate disturbance on January 12, 2009.  The use of force against a prison inmate is governed by the Eighth Amendment prohibition of cruel and unusual punishment. To establish a claim for excessive use of force under the Eighth Amendment, a prison inmate must present evidence to show that the force was applied "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  Courts and juries evaluating claims of excessive force consider five factors "relevant to ascertaining whether force was used 'maliciously and sadistically for the very purpose of causing harm.'" Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999)(quoting Whitley, 475 U.S. at 321)).  These five factors are:

    (1) the extent of injury;

    (2) the need for application of force;

    (3) the relationship between that need and the amount of force used;

    (4) any efforts made to temper the severity of a forceful response; and

    (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.

Id.  Plaintiff's evidence, if believed, would raise serious concerns about the need for the application of force and the extent of the threat to the safety of staff and inmates.

Plaintiff's evidence indicates that he was beaten after the disturbance was quelled, when he and other inmates were restrained in a secure area.  Plaintiff testified that he was taken outside into a yard away from the area of the disturbance.  He and other inmates were handcuffed and lying face

down on the ground. In that situation, there is nothing to suggest the need for an application of force, certainly not for the sort of beating Plaintiff describes. "Officials may not use force against a prisoner who has already been subdued because '[t]he use of force must stop when the need for it to maintain or restore discipline no longer exists.'" Council v. Sutton, 366 Fed. Appx. 31, 36 (11th Cir. 2010)(unpublished opinion)(quoting Skrtich v. Thornton, 280 F.3d 1295, 1304 (11th Cir. 2002)).

     In Plaintiff's version of the facts, the beating appears to be intended as retaliation for Plaintiff's perceived role as an instigator of the disturbance. Defendants, in their arguments, focus not on the need for force after Plaintiff was restrained (as they categorically deny that any such force was ever applied to Plaintiff), but on the need for force in quelling the disturbance in the dormitory. Although the force described by Defendants in that circumstance was certainly justified, it is not related to Plaintiff's claims, except to the extent that Plaintiff is seeking redress for any injury caused by the use of tear gas. A reasonable jury, accepting Plaintiff's version of facts as true, could determine that the use of force he describes was completely unnecessary, out of proportion to any perceived danger or need to restore discipline, and imposed solely for the purpose of inflicting pain in a sadistic and malicious fashion.

     Defendants contend that Plaintiff's testimony is so lacking in credibility and so thoroughly contradicted by other evidence that it cannot create a genuine issue of material fact. Defendants focus particularly on the limited evidence of any physical injury to Plaintiff. The medical records presented to the Court are ambiguous. On the one hand, there is evidence that Plaintiff suffered numerous observable abrasions on the front of his body. This is consistent with Plaintiff's testimony that he was subject to some force while lying face down on the ground, and inconsistent with Defendants' testimony that Plaintiff was never subjected to any use of force whatsoever, except for

the exposure to tear gas.  On the other hand, the medical records do not contain any record of bruising or broken bones that might be expected from the sort of savage beating that Plaintiff describes.  They also suggest that his ongoing complaints of headaches and neurological issues likely resulted from a previous beating in 2003, rather than from anything that happened on January 12, 2009.  The ambiguity in the medical evidence is best resolved by a jury with a full opportunity to evaluate the witnesses and make findings of credibility.

Given the genuine issues of material fact regarding the nature and severity of the force used against Plaintiff, Defendants have not demonstrated that they are entitled to qualified immunity as a matter of law.  As set forth above, the severe beating described in Plaintiff's testimony would constitute an excessive use of force in violation of the Eighth Amendment.  In the Eleventh Circuit, the defense of qualified immunity is not available in cases where it is shown that force was used "maliciously and sadistically to cause harm."  Skrtich, 280 F.3d at 1301.  "There is simply no room for qualified immunity when the plaintiff alleges such a violation."  Id.

Accordingly, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment be **DENIED**.  Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 2nd day of September, 2011.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge